Next case, United States v. Lewis, Ms. Albrow. Thank you, your honor. May it please the court, my name is Kimberly Albrow and I'm here on behalf of the appellant Roderick Lewis. I believe that the easiest way that this case can be resolved is by determining whether probable cause was established to allow the officer to do a search and seizure on Mr. Lewis's curtilage. I don't want to reiterate everything that was in the brief, but there are a long line of cases from the Supreme Court. Where do you start though? Where is this curtilage argument raised in the district court? The curtilage argument, the curtilage was never specifically mentioned in the district court. Okay, so you agree we're on a plain error review? I think that probable cause was raised below, although curtilage wasn't. So looking at it that way, you may have to apply the plain error review specifically to the curtilage argument. I do think that the motion was not drafted in a way that is ideal for Mr. Lewis, but I do believe that his attorney raised the probable cause issue. He did argue that the interaction was not legal and there wasn't even reasonable suspicion for that interaction. The curtilage would change the analysis if that argument had been made. So if we're on plain error review, what's in the record that says there is a curtilage? There's a good bit of information. I don't think it can even be disputed. One of the indicated that it was Mr. Lewis' residence. There's also the pre-sentence report, which is after the fact, but it's Joint Appendix 241, indicates that Mr. Lewis' address is the 401 South 1st Street. I don't think there's any doubt that this is where the person lived, but just because you live somewhere, that doesn't tell you anything about curtilage. That's a very specific legal concept. So if someone were going to argue curtilage, which would have been whoever was representing Mr. Lewis below, would have been their burden to do, you would put some evidence in the record. He could testify about, well, there was a fence around the house. People couldn't come in the yard. We excluded people from coming in, that sort of stuff. He could take pictures. He could verify this is what the house looked like as of the date of the arrest. They could put Google Earth pictures in there and date certifying, that sort of stuff. You don't have anything in this case. I would disagree with that. There are several things. The police officer did testify on cross-examination that he entered Mr. Lewis' yard. What does that prove about curtilage? Because yard and curtilage are not synonymous. Well, I believe, I wish I had a hand. There's a definition of curtilage which includes anything that, and I believe it's in my brief, that anything that extends from the house such that you expect privacy there, and there's testament, oh, excuse me. Go ahead, I'm sorry. I'll follow up. I was just going to say there was testimony about how far the officer was, the feet and whatever. The testimony was that Mr. Lewis was entering the side door of his house. Also, there was testimony about, I mean, where he was arrested, he was climbing over a fence. That was Mr. Lewis' testimony, right? Correct. But didn't the police officer have a different accounting of how far away he was from the residence? The police officer ultimately admitted that he was in Mr. Lewis' yard and that he was like 20 feet from him within the yard and that Mr. Lewis had been, I believe he also said that he was entering into the side door, and I believe it was the police officer's testimony that established there was a fence around the backyard where he arrested Mr. Lewis because he pulled him off the fence. Well, there was a fence on one side of the yard that Mr. Lewis was climbing. That doesn't tell you anything about the rest of the yard. It seems to me at best there's evidence concerning the four, I think four factors for curvilege that the only thing that there's potential evidence on is the proximity to the house. There's nothing about being enclosed. There's nothing about the nature of the use. There's nothing about steps taken to protect or preclude. So, I mean, which is probably consistent with the fact that it wasn't raised below. There was not a real effort to make that point. Correct. I mean, I think the record was not established. I looked at it as one of the items that the courts look at are fencing, and there was the fence at least on one side of the property. It did appear that the officer's testimony, the fluid nature of him getting out of his car and approaching Mr. Lewis, and Mr. Lewis coming somewhat back from the door that he enters into his house, showed that it was within... Well, assume we don't think you have point, and I'm not making a determination, but assume for the sake of discussion that we don't believe there's plain error with respect to curvilege. What's your position on whether, you know, under the standard of review that we have pertaining to whether there was a seizure or not? What's your position as to that given the standard review we have? If the seizure of the initial encounter... Was there a seizure initially or not? And, you know, what's the basis to your position? The seizure, initially when the officer approached, he was in his police car, Mr. Lewis was about to enter his house, and the officer got out and entered Mr. Lewis' yard, whether or not that's considered curvilege, and he said, I need your identification. You know, I think that's a show of authority. Mr. Lewis was complying with that, and the district court order cited facts both as to what Mr. Lewis testified to and what the officer testified to, and some of that might be contradictory, so it's somewhat difficult to sort out the officer showed a further demonstration of authority by saying, hey, I might have a warrant for your arrest. It was done in a rather casual manner, but Mr. Lewis was already complying with the request according to the officer. He certainly didn't comply at that point. Not once he said the warrant, but that would be, to answer Judge Caldwell's question, that would be how he showed further authority making this not a consensual encounter, but making it a seizure. What do you do with the fact that he said he felt like he was able to leave? His own testimony. Did you believe that you had the right to just walk away from him? Yes. And I think that's why he ran. So I take a, I have a little bit different take on that. I understand that he said, yes, I thought I could leave. That's why he ran away. So I think that Was there a seizure at that point or did the seizure come when he was climbing the fence? Well, a seizure definitely came when he was climbing the fence. Before that, it's a much closer question, I think. So that's why if the, if the, if this court wanted to focus on the seizure, there was definitely a seizure when he was take away the fact that he had to have, that you're not going to consider the curtilage issue if that's what the court chooses to do. He, and we don't have to establish probable cause. It would just be reasonable suspicion for the seizure. He was arresting him and he arrested him and put handcuffs on him before he even knew Mr. Lewis had a gun. So he was absolutely seized by then. And at that point, all the officer had was an arrest warrant for Mr. Lewis's brother. That was one fact. And at that point he didn't know who it was for, but it wasn't for Mr. Lewis. And the only other bit of information that would justify the reasonable suspicion at that point is that Mr. Lewis ran. Well, he had told, the officer told Mr. Lewis, I think I have a warrant for you. He's gone. So why wouldn't that be reasonable suspicion at that point? Because that's really all he has other than a warrant that doesn't belong to Mr. Lewis. Well, he doesn't know that. He knows it's for Lewis and he knows it's one of two people. And you make the argument that that's not sufficiently individualized. Do you have any authority for a scenario like this where it's one of two people, that that's not sufficiently, and this isn't like a dragnet, he's just grabbing someone at random. He knows there's two Lewis's. He's not sure which one. Is there any authority you have in a situation factually similar to this where that's not thought to be sufficiently individualized? Nothing that close to facts, but I would disagree that the officer testified that he did not know. The government included in its response to the motion initially that the officer knew it was one of the two brothers. Correct. But the officer denied that. And the finding of fact by the district court was that he didn't know who it was. It's in footnote one, it's Joint Appendix 126, and this is in the court's order. Originally the government took the position that Sgt. Townsend knew the outstanding warrant was either for Roderick Lewis or his brother Damian Lewis. Sgt. Townsend's testimony revealed that he did not know anything other than that the warrant was for a Lewis. So I don't think that's sufficient. This is clear error review if you want to reject that finding of fact by the district court. But he knew Mr. Lewis. He knew Mr. Lewis. And he knew his reputation in the neighborhood. He did, as a neighborhood bully. So it's not just sort of a dragnet situation, as Judge Quattlebaum said. It's a Lewis, and that's all he knows. And he even admitted that the address he overheard when he was leaving the police briefing that morning, that he had only associated that with the brother Damian, not my client, Mr. Lewis. So he had never even associated Mr. Lewis with the address that was associated with this warrant for a Lewis person. But why is not, why is not, and we have information before their encounter that you've made arguments about whether it's sufficient for reasonable suspicion. But when you combine that with flea, I mean, those all together, that totality, is that not reasonable suspicion? I don't think that anything about the warrant for a Lewis person could establish reasonable suspicion, even in connection with him fleeing. It's almost as if, I mean, in my mind, I guess the best way to state it is that the warrant provided nothing because it wasn't particularized at all to Mr. Lewis. And the fact that he stated that he thought he could leave at any time, and he was in his yard, again, whether or not it's considered a curtilage, he felt like he could retreat from that questioning at that time. So the only thing he did was flee, and there's case law that says that alone isn't enough. There may be a little bit more than solely fleeing because the officer believed he had a warrant, but the warrant wasn't particularized to Mr. Lewis at all and ultimately wasn't addressed to Mr. Lewis. So I don't have anything to add to that unless the Court has further questions. I'll yield my time. All right. Thank you. You've got some rebuttal time. Mr. McMillan. May it please the Court, Everett McMillan on behalf of the United States. Your Honors, the curtilage issue and the probable cause issue were not raised in the District Court, and therefore this Court does only review those on a plain error review. Additionally, there are insufficient facts in the record to determine whether or not the encounter took part, all or in part, on the curtilage. As Your Honors pointed out, there's some testimony about there being a fence, but we don't know if the entire yard was enclosed. And importantly, the officer even said that he was unable to determine where the property began or ended when he pulled up. So that issue was no error for the District Court not to take up that issue. Secondly, as to the seizure question, the District Court correctly decided that there was no seizure at the initial encounter between Officer Townsend and the defendant. The defendant fled prior to any possible seizure taking place, and the officer had several facts within his knowledge at that time. First, he knew that there was a warrant for a Lewis individual. He associated the address that he heard on that warrant with a residence that he knew the defendant and his brother were associated with, even though he had not particularly encountered the defendant at that address. He said he associated that address with the defendant. He knew that the warrant was for an assault on a family member, and he knew that the defendant had a reputation as a neighborhood bully that had come about in the two months prior to this incident, which all of those factors together, in light of the defendant's flight upon hearing that there may be a warrant for his arrest, certainly gave the officer reasonable suspicion to engage in the stop that he engaged in. I'm glad to answer any further questions the Court may have. Thank you very much. Thank you. I'll rest on my brief. Ms. Albro, you have some rebuttal time. Yes, sir. I really have not very much to add unless there are further questions. I would just say that the address associated with Lewis, I believe the testimony, I mentioned that earlier in my opening, and I don't think, I think the officer admitted that that address he had contact with Mr. Lewis's brother there, not Mr. Lewis. Okay. Thank you very much. We'll come down and brief counsel and move on to our last case.
judges: G. Steven Agee, Stephanie D. Thacker, A. Marvin Quattlebaum Jr.